ATTORNEY ID # 024991983
LAW OFFICE OF FRAN J. GARB
2 Ridgedale Avenue, Suite 245
Cedar Knolls, New Jersey 07927
MAILING ADDRESS: P.O. Box 2264
Morristown, New Jersey 07962-2264
T: (973) 605-1177, F: (973) 605-1835
ATTORNEY FOR PLAINTIFF

**CHARGE FEE TO ACCOUNT 146536**

| | |
|---|---|
| STEPHANIE SANTANGELO,<br><br>Plaintiff,<br><br>vs.<br><br>ADRIANA SANTANGELO, a/k/a ADRIAN BROWN, WILLIAM RIDDICK, JR., AND LORNA T. LUMPRIS,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MORRIS COUNTY<br><br>DOCKET NO. MRS-L-001775-19<br><br>Civil Action<br><br>**AMENDED COMPLAINT<br>and JURY DEMAND** |

STEPHANIE SANTANGELO, whose address is confidential, in reliance upon the attached Order of Protection entered in the matter of a family offense proceeding by Stephanie Santangelo, Petitioner, vs. Adrian Brown, Respondent, in the Family Court of the State of New York, County of New York, File # 302813, Docket #: O-04368-19, by way of Complaint against each of the above-named Defendants, says:

## FACTUAL BACKGROUND

1. Co-Defendant, Adriana Santangelo, a/k/a Adrian Brown ("hereinafter "Defendant Brown") residing at 160 Hampton House Road, Town of Newton, Sussex County, New Jersey, is the mother of Plaintiff, Stephanie Santangelo.

2. Co-Defendant, William Riddick, Jr. (hereinafter "Defendant Riddick"), resides at 82 Maple Avenue, Town of Morristown, Morris County, New Jersey.

3. Co-Defendant, Lorna T. Lumpris (hereinafter "Defendant Lumpris") who resides at 11b Leva Drive, Morris Township, Morris County, New Jersey, is the mother of Co-Defendant, William Riddick, Jr. Defendant Lumpris wrote a book entitled, "<u>The Perils of Life: Turn Life Challenges Into Eternal Success</u>." Defendant Lumpris is a friend of Defendant Brown and wrote of this friendship to Plaintiff.

4. Plaintiff is the only child of Defendant Brown. Plaintiff has had a torturous relationship with Defendant Brown and, as a result of physical and verbal violence by Defendant Brown against the Plaintiff, Defendant Brown allowed her parents, Valentino and Anina Santangelo, primarily to raise the Plaintiff. Plaintiff has been estranged from Defendant Brown since Plaintiff was a child.

5. Plaintiff is employed for over seven years with a business located in New York City, which business informed its employees that it had job opportunities for its employees opening in their expanding business throughout Europe, which opportunities would be open to those senior employees who also held a dual citizenship with the United States of America and a European country.

6. Defendant Brown was born in Pescara, Italy. She is the daughter of Valentino and Annina Santangelo, who emigrated from Pescara, Italy. Defendant Brown's parents became naturalized citizens, Valentino Santangelo on March 5, 1976, and Annina Santangelo on December 16, 1976. Defendant Brown, never applied for naturalization.

7. The Plaintiff's ability to obtain dual citizenship with the United States of America and Italy is possible as a result of her maternal grandmother and grandfather and mother being born in Italy and her maternal grandmother and grandfather becoming naturalized

citizens of the United States of America, and her mother, Defendant Brown, retaining full Italian citizenship only.

8. In or about December of 2017, Plaintiff went to Defendant Brown's home with a representative of a company employed to assist Plaintiff with her effort to obtain dual Italian citizenship. Plaintiff requested that Defendant Brown cooperate with Plaintiff to obtain a dual citizenship with Italy. Defendant Brown immediately agreed to help. Plaintiff asked Defendant Brown to sign a Declaration of Living Italian Ascendants and also provide the Plaintiff with her birth certificate, both part of the application process. Plaintiff informed Defendant Brown that the purpose was for the Plaintiff to use these two documents to obtain her dual citizenship. That was all Plaintiff requested of Defendant Brown.

9. Defendant Brown expressed to Plaintiff and the representative that she was pleased to learn Plaintiff wanted dual Italian citizenship and was happy to assist Plaintiff.

10. Defendant Brown cooperated and signed the Declaration form and provided the Plaintiff with her birth certificate. For reasons unknown by the Plaintiff, some time around New Year's Eve, 2017, Defendant Brown contacted the Italian Consulate in New York, New Jersey and Rome, Italy, and began an aggressive campaign to negatively impact Plaintiff and destroy any chance that the Plaintiff would have to obtain her dual Italian citizenship.

11. Defendant Brown informed the Italian Consulate that the signature on the document was not hers. Defendant Brown made other such knowing falsehoods, both in writing and in telephone conversations, including but not limited to that Plaintiff was not her child and that the birth certificate presented was stolen from her by the Defendant. The result of these communications has been that the Italian Consulate has refused to proceed with the

Plaintiff's application for dual Italian citizenship that would have been processed in or about April, 2019.

12. The Plaintiff's inability to obtain a dual citizenship with a European country has dramatically decreased, if not completely eliminated her ability to obtain any of the employment positions, financial gains and opportunities offered by her employer for new positions which are being created and opened up throughout Europe.

13. In March, 2018, a written cease and desist demand was made by Plaintiff's counsel to Defendant Brown to cooperate with any action that is required to reverse and remediate the harm Defendant Brown intentionally created in relation to Plaintiff's obtaining dual Italian citizenship. Defendant Brown has refused to do so.

14. Since in or about December, 2017, and continuing up through the date that a Protective Order was entered on April 11, 2019 by the Family Court of the State of New York, County of New York, against Defendant Brown on behalf of and for the protection of the Plaintiff, Defendant Brown has left thousands of voice messages on the Plaintiff's residential telephone. These messages are verbally abusive, threatening, aggressive and emotionally damaging to the Plaintiff. Some examples of the messages left are "You're just a black little maid", "I should have sold you into slavery", and other racist and racially derogatory comments. From in or about December, 2017 through the date of the entry of the Protective Order Defendant Brown has attempted to communicate with the Plaintiff at Plaintiff's workplace telephone and at her various places of employment to intimidate, threaten, cause professional embarrassment, and harass Plaintiff.

15. Defendant Brown, has enlisted the participation and cooperation of her friend, Defendant Lumpris, and the son of Defendant Lumpris, Defendant Riddick, to coerce, harass,

4

intimidate and threaten the Plaintiff's reputation, personal safety and the security of Plaintiff in her personal and workplace environment.

16. In January, 2019, the book written by Defendant Lumpris, "The Perils of Life: Turn Life Challenges Into Eternal Success" was delivered to the Plaintiff's home address by either Defendant Lumpris, Defendant Riddick or a third party engaged by Defendant Brown, Defendant Lumpris and/or Defendant Riddick, in a further action to coerce harass, intimidate, punish and threaten the Plaintiff. This book has a religious content and has created great fear in Plaintiff due to its theme.

17. The book had a hand-written note to "Stephanie" and was signed by Defendant Lumpris. It contained many personal details that could only have been relayed to Defendant Lumpris by Defendant Brown.

18. On July 29, 2018, Defendant Riddick appeared at the Plaintiff's place of work with two young children. Defendant Riddick represented to the other employee(s) that were at the main desk that these children "came to see their mommy" (Plaintiff) and specifically demanded they see Plaintiff. Plaintiff was at the work location and in a secure, private area with clients. Defendant Riddick was asked numerous times for his name or that he leave a note, but he declined to identify himself. He continued to insist that he wanted the children to see their mommy. He provided a false story to Plaintiff's co-employees in order that he would have access to the security footage of various customers and clients of Plaintiff's employer in order that he could see the room where Plaintiff worked and also to see what Plaintiff was doing. Defendant Riddick represented that other locations had allowed him to watch the Plaintiff while she worked. Defendant Riddick is clearly

shown on security footage doing this. Employees that interfaced with him have described his actions and statements.

19. Plaintiff has never met Defendant Riddick.

20. Plaintiff has never met Defendant Lumpris.

21. The Plaintiff has no children.

## COUNT ONE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1. Plaintiff repeats and re-alleges each and every allegation in the Factual Background ¶¶ 1 - 21 as if set forth herein in full and makes the same a part hereof.

2. Beginning late December, 2017, Defendant Brown has, with the malicious and intentional purpose of making knowingly false and untrue statements in writing about her daughter, the Plaintiff, to the Italian Consulate in New York, New York and Rome, Italy. The specific intention of Defendant Brown was to cause Plaintiff to not obtain dual Italian citizenship and cause her personal and professional harm and damages. In or about January 8, 2018, Plaintiff received a telephone call from the New York Italian Consulate who informed Plaintiff of disturbing news from Defendant Brown that Plaintiff be denied Italian citizenship. The Consulate stated that Defendant Brown made such statement(s) which included but are not limited to: that the signature on the document presented to the Italian Consulate by the Plaintiff to obtain her dual Italian citizenship was not the signature of Defendant Brown, the Birth Certificate presented to the Italian Consulate by the Plaintiff to obtain her dual Italian citizenship was stolen from Defendant Brown by the Plaintiff, Plaintiff was not Defendant Brown's child, and Defendant Brown

6

did not support or cooperate with the Plaintiff in Plaintiff's effort to secure a dual Italian citizenship.

3. In committing the intentional infliction of emotional distress as to the Plaintiff, Defendant Brown did so with the malicious and bad faith intent to harm the Plaintiff, block Plaintiff's ability to obtain dual Italian citizenship, cause damage to her professional and personal reputation, create a loss of wages, cause emotional harm, damage her name and reputation, cause Plaintiff to lose monies Plaintiff incurred to obtain dual Italian citizenship, and create a loss of employment in Europe through her employer.

4. As a direct result of Defendant Brown's intentional inflictions of emotional distress as to the Plaintiff, the Plaintiff's initial ability to obtain dual citizenship in April, 2019 was cancelled and her case will not be reopened until Defendant Brown admits her intentional lies and cooperates to execute the required forms. Plaintiff has incurred monetary damages, loss of future earnings, and an inability to obtain her Italian citizenship due to knowing falsehoods made by Defendant Brown.

WHEREFORE, Plaintiff demands Defendant Brown appear before the Italian Consulate in New York, New York, and provide a written notarized statement to the Italian Consulate that the signature on the document is in fact the signature of Defendant Brown, that the Birth Certificate presented was in fact the Birth Certificate of the Plaintiff, that she is willing to cooperate in all efforts by the Plaintiff to obtain her Italian citizenship and that the statements that she previously provided to the Italian Consulate in Newark, New Jersey, New York, New York and Rome, Italy were knowingly false, which she intentionally made in order to create harm and cause monetary damages to be sustained by the Plaintiff, that Plaintiff sustained damages in the minimum amount of $150,000, and that Defendant Brown be responsible for all

7

monetary damages including but not limited to all expenses incurred to obtain Plaintiff's dual citizenship, Plaintiff's loss of wages, future loss of wages and job promotion and employment as a result of Defendant Brown's intentional and malicious knowingly false written statements and all other monetary and equitable relief this Court finds is just and applicable, including costs of suit and attorney fees.

### COUNT TWO

### INTENTIONAL INTERFERENCE WITH PLAINTIFF'S PROSPECTIVE ECONOMIC ADVANTAGE

1. Plaintiff repeats and re-alleges each and every allegation in the Factual Background ¶¶ 1 - 21 and COUNT ONE - ¶¶ 1- 4 as if set forth herein in full and makes the same a part hereof.

2. Defendant Brown has with the malicious and intentional purpose of making knowingly false and untrue defamatory spoken statements about her daughter, the Plaintiff, to the Italian Consulate in New York and Rome with the specific intention to cause Plaintiff harm as Defendant Brown knew without the dual citizenship that Plaintiff would not be offered the employment promotion to work in Europe. Such knowingly false and malicious statement(s) included but are not limited to: that the document presented to the Italian Consulate by the Plaintiff to obtain her dual Italian citizenship was not the signature of Defendant Brown, the Birth Certificate presented to the Italian Consulate by the Plaintiff to obtain her dual Italian citizenship was stolen from Defendant Brown by the Plaintiff, Plaintiff was not Defendant Brown's child, and Defendant Brown did not support or cooperate with the Plaintiff in Plaintiff's effort to secure a dual Italian citizenship.

8

3. In committing intentional interference with Plaintiff's prospective economic advantage as to the Plaintiff, Defendant Brown did so with the malicious and bad faith intent to harm the Plaintiff by blocking Plaintiff's ability to obtain dual Italian citizenship, cause damage to her professional and personal reputation, create a loss of wages, cause Plaintiff to lose monies Plaintiff incurred to obtain dual Italian citizenship, cause emotional harm, damage her name and reputation, and create a loss of employment in Europe through her employer.

4. Plaintiff has achieved tenure in her job. When the new European studio opened this year, 2019, Plaintiff requested she be considered as a senior instructor. With her dual Italian citizenship, in addition to her tenure status and being a senior instructor, Plaintiff was qualified upon her request that she be given a job placement overseas in Europe. Placement in Europe would automatically give Plaintiff increased salary and increased professional visibility and experience, not only in Europe but in the United States upon her return.

5. As a direct result of Defendant Brown's intentional slander as to the Plaintiff, the Plaintiff has incurred monetary damages, loss of future earnings, loss of an increased professional visibility, and an inability to obtain her Italian citizenship due to knowing falsehoods made by Defendant Brown.

WHEREFORE, Plaintiff demands Defendant Brown appear before the Italian Consulate, New York, New York, and to provide a written, notarized statement to the Italian Consulate that the signature on the document is in fact the signature of Defendant Brown, that the Birth Certificate presented was in fact the Birth Certificate of the Plaintiff, that she is willing to cooperate in all efforts by the Plaintiff to obtain her Italian citizenship and that the statements

that she previously provided to the Italian Consulates in Newark, New Jersey, New York, New York, and Rome, Italy were knowingly false which she intentionally made in order to create harm and cause monetary damages to be sustained by the Plaintiff, the Plaintiff sustained damages in the minimum amount of $150,000, and that Defendant Brown be responsible for all monetary damages, including but not limited to all expenses incurred to obtain Plaintiff's dual citizenship, Plaintiff's loss of wages, future loss of wages, job promotion and future employment as a result of Defendant Brown's intentional and malicious knowingly-false statements, and all other equitable relief this court finds is just and applicable, including costs of suit and attorney fees.

## COUNT THREE

### INTENTIONAL HARASSMENT

1. Plaintiff repeats and re-alleges each and every allegation in the Factual Background ¶¶ 1 - 21, COUNT ONE ¶¶ 1- 4 and COUNT TWO ¶¶ 1- 4 as if set forth herein in full and makes the same a part hereof.

2. Defendant Brown, with intent to harass Plaintiff and with a careless and negligent concern for creating emotional and physical harm to the Plaintiff, did place well over a thousand voice telephone messages to the Plaintiff at her residence, many times over fifty messages in one day, through April, 2019. These messages included threats of bodily harm, wishing Plaintiff were dead, mocking the Plaintiff, saying humiliating statements to Plaintiff, cursing at the Plaintiff, all with the intent to harm, harass, cause fear and anxiety, and to intimidate Plaintiff.

3. As a result of the intentional voice messages which number over a thousand left to Plaintiff at her home by Defendant Brown, Plaintiff has suffered severe emotional harm,

10

anxiety and fear for her life, which has resulted in the need for Plaintiff to seek and obtain psychiatric and rehabilitative treatment, and Plaintiff's inability to work and hence earn income for several months.

WHEREFORE, Plaintiff demands judgment in her favor in the amount of $100,000 for the physical and emotional damage and toll that the intentional actions by Defendant Brown have caused Plaintiff. Plaintiff also requests full compensation of lost wages, costs of suit, attorney fees, if available, and any and all other equitable relief be afforded to the Plaintiff by this Court.

## COURT FOUR - CONSPIRACY

1. Plaintiff repeats and re-alleges each and every allegation in the Factual Background ¶¶ 1 - 21, COUNT ONE - ¶¶ 1- 4, COUNT TWO ¶¶ 1- 4 and COUNT THREE, ¶¶ 1 - 3 as if set forth herein in full and makes the same a part hereof.

2. Defendant Brown, Defendant Lumpris and Defendant Riddick, with intent to conspire and cause both financial and emotional harm to the Plaintiff, conspired to form a plan to humiliate and defame the Plaintiff. This plan consisted of Defendant Lumpris delivering or arranging to have a copy of her religious themed book with her hand-written message therein delivered to the Plaintiff's residence between December 31, 2018 and January 9, 2019. The message and the book contained offensive religious-themed messages which caused Plaintiff tremendous fear and anxiety and Plaintiff's immediate belief that this aggressive act by the Co-Defendants placed Plaintiff in imminent physical danger to her person by the Co-Defendants.

3. This conspiracy also included having Defendant Riddick, son of Defendant Lumpris, appear at the Plaintiff's place of employment on July 29, 2018, and present himself in such a way to convince the managers and other employees that he had a right to have

access to private rooms where Plaintiff was conducting her business. Defendant Riddick stated that he and Plaintiff had two children who were with him and the children wanted to see their mommy at work and they wanted access to the Plaintiff. Defendant Riddick represented to Plaintiff's managers and co-employees that he had been granted access previously at other locations of the Plaintiff's employer and that the children just wanted to see their mommy. Not one of these statements by Defendant Riddick was true.

4. Defendant Brown, Defendant Lumpris and Defendant Riddick conspired to the above-referenced malicious activity with the knowledge that not only was the Plaintiff not related to Defendant Riddick, Plaintiff had no personal knowledge of Defendant Riddick, the two children shown on a security video with Defendant Riddick are not Plaintiff's, and the Plaintiff has no children.

5. Defendant Brown, Defendant Lumpris and Defendant Riddick conducted and planned such a malicious conspiracy to harass, threaten and coerce the Plaintiff at her place of employment by appearing with two young children that are completely unknown and unrelated to the Plaintiff, by insisting that they have access to videos of Plaintiff working with clients and with the Plaintiff personally at work in order to breach all security put in place by the Plaintiff's employer, all as an intentional act to cause harm to the Plaintiff and Plaintiff's personal and professional reputation and threaten her personal well being and safety by stalking Plaintiff.

6. As a result of the intentional acts by Defendant Brown, Defendant Lumpris and Defendant Riddick to conspire, to harass, stalk and cause emotional and physical damage to the Plaintiff, the Plaintiff has sustained and suffered great anxiety and fear for her personal safety at home and at work, has sustained emotional and physical damage,

Plaintiff has sought psychiatric and rehabilitative services as a result of these menacing and physical intrusions into her personal home and work environment, and has created a loss of wages as a result of Plaintiff's inability to appear and perform at work and Plaintiff's need to obtain and receive the psychiatric and rehabilitative services.

WHEREFORE, Plaintiff demands judgment against Defendant Brown, Defendant Lumpris and Defendant Riddick, individually and jointly in the amount of $500,000 plus costs of suit, attorney fees and any and all equitable relief that the Court deems applicable in this matter.

LAW OFFICES OF FRAN J. GARB<br>
Attorneys for Plaintiff<br>
By: _____<br>
Fran J. Garb

Dated: August 19, 2019

## CERTIFICATION PURSUANT TO RULE 4:5-1(b)(2)

I hereby certify that to the best of my information, knowledge and belief that the matter in controversy is not the subject of any other action pending in any New Jersey Court or of a pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and I am not aware of any other person who should be joined in this matter. This matter is associated with a Court matter entitled: Stephanie Santangelo, Petitioner, vs. Adrian Brown, Respondent, Family Court of the State of New York, County of New York, File # 302813, Docket #: O-04368-19, wherein the Petitioner, Stephanie Santangelo, was granted an Order of Protection from that of Adrian Brown, effective April 11, 2019, to stay away from Stephanie Santangelo, the home of Stephanie Santangelo, the business of Stephanie Santangelo, the place of employment of Stephanie Santangelo, to refrain from communication or any other contact by mail, telephone, email, voicemail, or electronic or other means with Stephanie Santangelo, no communication,

either directly or via third parties, and to surrender any and all handguns, pistols, and other firearms owned or possessed, including but not limited to all firearms and to not obtain any further guns or firearms. The Order of Protection is to remain in force until and including June 24, 2021.

## CONFIDENTIAL PERSONAL IDENTIFIERS

I certify that confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future in accordance with the Rule 1:38-7(b).

## JURY DEMAND

Plaintiff demands a <u>Trial by Jury on all issues</u>.

## TRIAL COUNSEL DESIGNATION PURSUANT TO RULE 4:5-1(c)

Fran J. Garb, Esquire is hereby designated as trial counsel in this matter.

LAW OFFICES OF FRAN J. GARB<br>
Attorneys for Plaintiff<br><br>
By: _____<br>
Fran, J. Garb, Esq.

Dated: August 19, 2019

## CERTIFICATION OF VERIFICATION OF NON-COLLUSION AND MERITS

I have read, reviewed and understand the attached document. The facts set forth in said document are true to the best of my knowledge, information and belief. This Certification of Verification and the attached document are made in truth and good faith without collusion for the causes set forth herein.

_____
STEPHANIE SANTANGELO

Dated: August 19, 2019

F.C.A §§ 446, 551, 656, 842 & 1056

GF5a 12/2013

ORI No: NY030023J
Order No: 2019-005575
NYSID No: _____

At a term of the Family Court of the State of New York, held in and for the County of New York, at 60 Lafayette Street, New York, NY 10013, on June 25, 2019

PRESENT: Jessica Brenes, Court Attorney Referee

In the Matter of a FAMILY OFFENSE Proceeding

Stephanie Santangelo (DOB: 12/04/1965),
    Petitioner

- against -

Adrian Brown (DOB: 06/30/1942),
    Respondent

File #    302813
Docket #   O-04368-19
Order of Protection

Upon Default

NOTICE: YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION, WHICH MAY RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CRIMINAL CONTEMPT, AND/OR MAY SUBJECT YOU TO FAMILY COURT PROSECUTION AND INCARCERATION FOR UP TO SIX MONTHS FOR CONTEMPT OF COURT.

THIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR CONSENTS TO HAVE, CONTACT OR COMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR TERMINATED BY THE COURT. THE PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS ORDER.

A petition under Article 8 of the Family Court Act, having been filed on April 11, 2019 in this Court and After Hearing, and Adrian Brown having been not present in Court.

    NOW, THEREFORE, IT IS HEREBY ORDERED that Adrian Brown (DOB:06/30/1942) observe the following conditions of behavior:

[01] Stay away from:

 [A] Stephanie Santangelo (DOB 12/04/1965);

 [B] the home of Stephanie Santangelo (DOB: 12/04/1965);

 [D] the business of Stephanie Santangelo (DOB: 12/04/1965);

 [E] the place of employment of Stephanie Santangelo (DOB: 12/04/1965);

[14] Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with Stephanie Santangelo (DOB: 12/04/1965) NO COMMUNICATION EITHER DIRECTLY OR VIA THIRD PARTIES;

[12] Surrender any and all handguns, pistols, revolvers, rifles, shotguns and other firearms owned or possessed, including, but not limited to, the following: Any and all fire arms and do not obtain any further guns or other firearms. Such surrender shall take place immediately, but in no event later than immediately at Nearest precinct;

GF-5a Page 2
O-04368-19
2019-005575

It is further ordered that this order of protection shall remain in force until and including June 24, 2021.

Dated: June 25, 2019

ENTER

_____
Jessica Brenes, Court Attorney Referee

PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE ATTORNEY FOR THE CHILD UPON THE APPELLANT, WHICHEVER IS EARLIEST.

The **Family Court Act** provides that presentation of a copy of this order of protection to any police officer or peace officer acting pursuant to his or her special duties authorizes, and sometimes requires such officer to arrest a person who is alleged to have violated its terms and to bring him or her before the court to face penalties authorized by law.

**Federal law requires** that this order is effective outside, as well as inside, New York State. It must be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or possession of the United States, if the person restrained by the order is an intimate partner of the protected party and has or will be afforded reasonable notice and opportunity to be heard in accordance with state law sufficient to protect due process rights (18 U.S.C §§ 2265, 2266).

It is a federal crime to:
- cross state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
- buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law enforcement officers but only while they are on duty) ; and
- buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even after this Order has expired (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262).

Check Applicable Box(es):

[ ] Party against whom order was issued was advised in Court of issuance and contents of Order

[ ] Order personally served in Court upon party against whom order was issued

[x] Service directed by other means: Mail

[x] [Modifications or extensions only]: Order mailed on [specify date and to whom mailed]

[ ] Warrant issued for party against whom order was issued[specify date]: _____

[ ] ADDITIONAL SERVICE INFORMATION [specify]: _____